JOURNAL ENTRY AND OPINION
{¶ 1} Willie Speed appeals his criminal convictions for rape, attempted rape, kidnapping, impersonating a police officer, and possession of criminal tools, following a bench trial in the common pleas court, criminal division. Speed also appeals the trial court's finding that he is a sexually violent predator and certain aspects of his prison sentence. After reviewing the record and for the reasons set forth below, we affirm Speed's criminal convictions, but vacate his sentence and remand this case for resentencing.
 {¶ 2} In the early morning hours of March 26, 2003, the victim, N.S., left her home on East 101st Street and walked to the convenience store located on the corner of East 89th Street and Cedar. When she arrived there, she saw her friend Jerome closing down the gates of the store. N.S. asked Jerome for some cigarettes, but Jerome told her that the store was closed.
 {¶ 3} N.S. then left the convenience store. As N.S. was walking toward her home, a dark blue 1995 Ford Taurus driven by Willie Speed pulled up along side her and asked her if she was "dating and/or working," which is another way to ask if N.S. was a prostitute. N.S. told Speed she was not "dating or working."
 {¶ 4} Speed then flashed a silver badge and told N.S. that he was a police officer. Speed was wearing a dark blue jacket, dark blue
 {¶ 5} work pants, and a black baseball cap. He told N.S. that she should not be out this late at night and offered to take her to a gas station to buy some cigarettes and then drive her back home. N.S. got into Speed's car.
 {¶ 6} Once inside the car, Speed told N.S. that he would arrest her for being a prostitute if she did not have sex with him. N.S. tried to reach into her pocket where she had a can of mace. Speed saw her moving and grabbed tightly onto her wrist. Speed stopped the vehicle near Cumberland Avenue and East 96th Street. Once the vehicle was stopped, he instructed N.S. to get out of the vehicle. While still clenching onto her wrist, Speed took N.S. to the front of the vehicle and frisked her, like a police officer. Speed took the can of mace out of her pocket and threw it into a field. He then engaged in vaginal and oral sex with N.S. He also attempted to have anal sex with the victim, but was not able to penetrate.
 {¶ 7} N.S. pleaded with Speed not to rape her, but complied with his orders fearing for her life. During the course of the rape, N.S. claimed Speed choked her, squeezed her shoulders hard, and punched her in the head. When Speed finished raping N.S., he simply told her to pull up her pants and leave. However, as she was walking away from Speed's vehicle, N.S. looked back and memorized his license plate number.
 {¶ 8} After Speed had left the area, N.S. flagged down a passing vehicle and had the driver take her to the Cleveland Clinic. When N.S. arrived at the Clinic, the waiting room was full, and she felt she could not wait to be attended to. N.S. was terrified of becoming pregnant or of contracting a sexually transmitted disease. She went home and took a long bath and then a shower, "scrubbing herself like she never scrubbed before."
 {¶ 9} The next day, N.S. had her boyfriend, Jack, who she considered to be her husband, take her to the police station. N.S. gave the police a description of the suspect's vehicle as being a dark blue bubble-looking car. N.S. also described the suspect as being a big, tall man with brown skin, a mini afro, and a thick beard. She then told the police she thought the man's name was "Will" and provided them with the license plate number she had memorized. The police told N.S. to go to the Cleveland Clinic for a rape examination. Instead, N.S. went to see her friend Jerome at the convenience store, where the two engaged in sexual intercourse.
 {¶ 10} The following day, Jack took N.S. to the Cleveland Clinic where a rape examination was performed. Because Jack was present during the examination, N.S. did not reveal to the nurse that she had engaged in sexual relations with Jerome. Both N.S. and Jerome had been keeping their relationship secret. The DNA collected from N.S.'s rape examination did not match the DNA profile of Speed.
 {¶ 11} Detective Arthur King of the Cleveland Police Department ran the license plate number of the vehicle N.S. had provided to him. From this search, the detective learned the vehicle belonged to a woman who lived in Lakewood. Detective Arthur went to the woman's home and was interviewing her when Speed arrived at the home. The detective observed that Speed's appearance matched the general description provided by N.S. and further learned that his first name was Willie. He also noticed that the description of the vehicle matched the description provided by N.S.
 {¶ 12} Detective Arthur prepared a photo array of possible suspects for N.S. to view. N.S. immediately identified the photograph of Speed as the man who had raped her.
 {¶ 13} On April 22, 2003, the Cuyahoga County Grand Jury indicted Speed on three counts of rape, in violation of R.C.2907.02, three counts of kidnapping, in violation of R.C.2905.01, one count of aggravated robbery, in violation of R.C.2911.01, four counts of impersonating a police officer, in violation of R.C. 2921.51, one count of intimidation, in violation of R.C. 2921.04, and one count of possession of criminal tools, in violation of R.C. 2923.24. The indictment also included a notice of prior conviction, pursuant to R.C.2929.13(F)(6), a repeat violent offender specification, pursuant to R.C. 2941.149, and a sexually violent predator specification, pursuant to R.C. 2941.148.
 {¶ 14} On August 26, 2003, a bench trial commenced. After the prosecution rested its case, the trial court granted Speed's Crim.R. 29 motion for judgment of acquittal on the charge of aggravated robbery. The prosecution then amended the indictment and reduced one of the rape counts to attempted rape, in violation of R.C. 2923.02. On August 28, 2003, the trial court found Speed guilty of two counts of rape, one count of attempted rape, three counts of kidnapping, four counts of impersonating a police officer, and one count of possession of criminal tools. The trial court found Speed not guilty on the intimidation charge.
 {¶ 15} On October 2, 2003, the trial court found Speed guilty of the sexually violent predator specification. The trial court sentenced Speed to nine years for kidnapping, nine years to life for rape, seven years for attempted rape, seventeen months for impersonating a police officer, and eleven months for possession of criminal tools. All sentences were ordered to run concurrently for a total prison term of nine years to life. The trial court further ordered that Speed would be subject to the maximum amount of post-release control allowed by law.
 {¶ 16} Speed appealed his convictions and sentence to this court. We remanded this case back to the trial court because the violent offender specification had not been ruled on. On July 20, 2004, the trial court dismissed the violent offender specification at the request of the prosecution.
 {¶ 17} Speed (hereinafter "appellant") now brings the instant appeal presenting seven assignments of error for review.
 {¶ 18} "I. "The trial court incorrectly premised its verdicts upon information not in evidence, in violation of mr. speed's fifth, sixth, and fourteenth amendment rights to trial, confrontation and due process of law."
 {¶ 19} In his first assignment of error, the appellant claims the trial court erred when it relied on evidence outside of the record to find him guilty of rape. The appellant argues that the trial court examined the police reports and medical records and considered the facts stated therein to be the truth. The appellant also claims the trial court relied on evidence outside the record when it stated the victim acted like a woman who had been raped.
 {¶ 20} A trial court has broad discretion over the admission of evidence. State v. Long (1978), 53 Ohio St.2d 91. A trial court's ruling will not be overturned absent an abuse of discretion. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations." State v. Jenkins (1984),15 Ohio St.3d 164, 222, quoting Spalding v. Spalding (1959),355 Mich. 382, 384-385. In order to have an abuse of that choice, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Nakoffv. Fairview General Hospital (1996), 75 Ohio St.3d 254.
 {¶ 21} In the instant matter, the trial court stated that the testimony of the victim was so graphic and gripping that it could not have been an act. Next, the trial court stated it had reviewed the written statement that the victim had provided to the police to see if the statement was consistent with her testimony. The trial court found that the written statement, made months before, was consistent with the victim's trial testimony. The trial court also reviewed the statements the victim had made to hospital personnel and found those statements to be consistent with her trial testimony.
 {¶ 22} The trial court stated she believed that the victim extensively washed herself and "scrubbed like she never scrubbed before," and this scrubbing explained why the appellant's DNA was not found in the victim. The trial court also gave significant consideration to the fact that the victim was able to identify the appellant in the photo array and in court without any hesitation. The court then stated that there is no possible motivation for the victim to name the appellant as her attacker; he was a perfect stranger to her.
 {¶ 23} In assessing the victim's demeanor while on the stand, the trial court stated that the emotions described by the victim were consistent with victims of rape; the victim's crying, her feelings of shame, feeling dirty, and not wanting to tell people close to her she had been raped. The trial court stated that the victim had described every woman's worst nightmare of being abducted by a stranger, brutalized and then raped.
 {¶ 24} We disagree with the appellant's assertion that the trial court used the victim's written police report and the statements she made to hospital personnel to prove the truth of the rape allegation. To the contrary, the trial court compared the statements with the victim's trial testimony in order to ascertain whether any inconsistencies existed that would discredit her testimony. The statements were not used to prove the truth of the allegations, but rather to show the veracity of the victim's testimony.
 {¶ 25} The appellant further claims that the trial court erred by stating the victim acted like a woman who had been raped — the feelings of shame, the crying, feeling dirty, and not wanting to tell anyone close to her were all signs that she had been raped. The appellant claims these facts were outside of the record and should not have been considered by the trial court when determining whether the appellant was guilty. We disagree.
 {¶ 26} Given all the reasons stated by the trial court for finding the appellant guilty, we conclude that the trial court did not err in stating that the victim acted like a woman who had been raped. It is apparent from the record that the trial court found the testimony of the victim to be credible. The trial court also found that the victim had no motive for accusing the appellant of rape because they were perfect strangers. Moreover, we agree with the trial court's finding that the victim's testimony was so graphic, gripping, and detailed that it could not have been an act. Furthermore, the trial judge is an experienced jurist who has presided over many rape trials and observed the demeanor and behavior of many rape victims; this experience is invaluable. The trial court was not offering an expert opinion as it relates to rape victims, but was merely elaborating, as the finder of fact, on her own personal observations.
 {¶ 27} Based on the numerous reasons the trial court stated for finding the appellant guilty, we hold the trial court did not abuse its discretion in reviewing the victim's past statements to the police and hospital personnel and also finding that the victim acted like a woman who had been raped. The appellant's first assignment of error is overruled.
 {¶ 28} "II. The verdicts were against the manifest weight of the Evidence."
 {¶ 29} In his second assignment of error, the appellant claims his convictions were against the manifest weight of the evidence because the victim was not credible. Specifically, the appellant claims the lack of DNA evidence linking him to the rape, various misstatements made by the victim, taken along with the victim's failure to reveal to police and hospital personnel that she had a sexual encounter with Jerome the day after the rape, should have led the trial court to find him not guilty on all charges.
 {¶ 30} Article IV, Section 3(B)(3) of the Ohio Constitution authorizes appellate courts to assess the weight of the evidence independently of the fact-finder. Thus, when a claim is assigned concerning the manifest weight of the evidence, an appellate court "has the authority and the duty to weigh the evidence and determine whether the findings of * * * the trier of fact were so against the weight of the evidence as to require a reversal and a remanding of the case for retrial." State ex rel. Squire v. Cityof Cleveland (1948), 150 Ohio St. 303, 345.
 {¶ 31} The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v. Florida (1982), 457 U.S. 31, where the court held that, unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
 {¶ 32} Upon application of the standards enunciated inTibbs, the court in State v. Martin (1983),20 Ohio App.3d 172, set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 33} "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 34} In the instant matter, the victim gave the following information to the police on the day following the rape. She told the police she had memorized the license plate number of the vehicle that the suspect was driving and described the car as being dark blue and bubble-shaped. She described the suspect as being a big, tall man with brown skin, a mini afro, and a thick beard. Her physical description of the suspect was exact enough for Detective King to instantly recognize the appellant when he appeared while the detective was interviewing the appellant's girlfriend at her home. Finally, the victim stated she thought the suspect's name was "Will."
 {¶ 35} From the information provided by the victim, Detective King created a photo array of six similar looking individuals. When presented with the photo array, the victim instantly selected the appellant's photograph as the man who raped her. The victim identified the appellant from the photo array even though he was depicted without a thick beard.
 {¶ 36} Convictions for rape often are decided in terms of credibility. Physical DNA evidence is not needed in order to sustain a conviction for rape. The mere fact that none of the appellant's DNA was found inside of the victim is not evidence that a rape did not occur. The victim explained to the trial court that she was afraid of getting pregnant or contracting a sexually transmitted disease, so instead of waiting in a crowded hospital emergency room for help, she went home and "scrubbed herself like never before."
 {¶ 37} Generally, minor misstatements will not destroy a victim's credibility. During trial, the victim testified she thought her attacker's name was "Joe." However, given a chance to refresh her memory with her prior police statement, she realized she had been mistaken and stated she thought her attacker's name was "Will." The victim further misstated the date on which she went to the hospital in order to have the rape kit performed; instead of going to the hospital on March 26th, she went on the 27th. Simply because the victim needed her memory refreshed as to certain facts does not destroy the reliability or credibility of her testimony, especially taking into consideration that the offenses occurred months before.
 {¶ 38} Lastly, the fact that the victim did not tell the police and the hospital staff that she had sexual relations with Jerome the day after the rape does not destroy her credibility. At trial, the victim admitted to the affair on the stand The victim did not lie to the police or hospital personnel about her relationship with Jerome; she simply did not tell anyone about it. The victim testified that she did not want to admit the sexual relationship with Jerome at the hospital and risk harming her relationship with her boyfriend, Jack. The victim also testified that she did not want to destroy Jerome's marriage by telling the police about their relationship simply because she had been raped.
 {¶ 39} After reviewing the entire record, we cannot say that the trial court, acting as the trier of fact, clearly lost its way in finding the appellant guilty. We find the victim's testimony, taken as a whole, to be credible; therefore, the appellant's convictions are not against the manifest weight of the evidence. The appellant's second assignment of error is overruled.
 {¶ 40} "III. The state improperly admitted evidence of Mr. Speed's refusal to speak with police."
 {¶ 41} In his third assignment of error, the appellant claims the prosecutor introduced prejudicial evidence sufficient enough to require a new trial. Specifically, the appellant claims the prosecutor elicited testimony from Detective King that the appellant refused to speak with the police or make a statement when arrested. The conduct of a prosecuting attorney during a trial generally cannot be made a ground of error unless the conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. State v. Papp
(1978), 64 Ohio App.2d 203, 18 Ohio Op.3d 157,412 N.E.2d 401, cited with approval in State v. Maurer (1984),15 Ohio St.3d 239, 15 Ohio B. 379, 473 N.E.2d 768. Moreover, it has been held a trial court must afford the prosecutor some latitude and freedom of expression during argument. State v. Apanovitch (1987),33 Ohio St.3d 19, 514 N.E.2d 394. Therefore, a defendant shall be entitled to a new trial only when a prosecutor makes improper remarks and those remarks substantially prejudice the defendant.State v. Tibbett, 92 Ohio St.3d 146, 2001-Ohio-132,749 N.E.2d 226; State v. Smith (1984), 14 Ohio St.3d 13, 14 Ohio B. 317,470 N.E.2d 883.
 {¶ 42} In the instant matter, the following exchange took place between the prosecutor and Detective King:
 {¶ 43} "Q. Okay. Did you make any contact with Mr. Speed at all?
 {¶ 44} "A. After he was arrested, yes.
 {¶ 45} "Q. Okay. And he provided you with no written or oral statement upon your request for an interview, correct?
 {¶ 46} "A. That's correct." (Tr. at 156.)
 {¶ 47} The prosecutor claims he was inquiring into the police investigation conducted by Detective King and not trying to impeach the appellant by revealing his post arrest silence to the trial court. Although we find this line of questioning to constitute an error, we cannot say this error substantially prejudiced the appellant enough to warrant a new trial.
 {¶ 48} First, the appellant's trial was heard to the bench and not to a jury. "In a bench trial, the trial court is presumed to rely on only relevant, material evidence in arriving at its judgment." State v. Lane (1995), 108 Ohio App.3d 477, 484,671 N.E.2d 272, citing, State v. Richey, 64 Ohio St.3d 353, 357,1992-Ohio-44, 595 N.E.2d 915. Therefore, we cannot say that the prejudicial comment would have affected the trial judge's findings; the trial judge knew the question was irrelevant and improper. Second, the evidence in this case was more than sufficient to find the appellant guilty of the offenses charged, absent the prejudicial comment. The appellant's third assignment of error is overruled.
 {¶ 49} "IV. The trial court erred when it entered convictions for the kidnapping charges in counts four through six after finding they were allied with the offenses alleged in counts one through three."
 {¶ 50} In his fourth assignment of error, the appellant claims that the trial court erred by failing to merge his convictions for rape and kidnapping after stating it would do so. (Tr. at 246.) The appellant argues that these convictions are allied offenses of similar import and should have been merged.
 {¶ 51} R.C. 2941.25(A) states:
 {¶ 52} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may only be convicted of only one.
 {¶ 53} "(B) Where the defendant's conduct constitutes two of more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately of with a separate animus as to each, * * * the defendant may be convicted of all of them."
 {¶ 54} The offenses of rape and kidnapping may be allied offenses of similar import. State v. Price (1979),60 Ohio St.2d 136, 398 N.E.2d 772. The Ohio Supreme Court set forth the following standard to determine whether kidnapping constitutes an allied offense of similar import: "where the restraint of movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain a separate conviction; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions." State v.Logan (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345, syllabus.
 {¶ 55} Ordinarily, the trial court speaks only through its journal entries; however, in the interest of justice, appellate courts will examine the entire record to determine the basis of the lower court's decision. Joyce v. General Motors Corp.
(1990), 49 Ohio St.3d 93, 551 N.E.2d 172; State v. Blade,
Cuyahoga App. No. 83796, 2004-Ohio-4486.
 {¶ 56} In the instant matter, the trial court stated at the sentencing hearing: "Counts four, five and six are kidnapping, R.C. 2911.01, also felonies of the first degree, which the court does believe will merge with the rape charges, nine years on all three of those counts." (Tr. at 246.) The trial court's journal entry did not merge the offenses of kidnapping and rape.
 {¶ 57} The victim was coerced into entering the appellant's vehicle, believing he was a police officer. When the appellant drove in a different direction than where the victim thought he was taking her, she told the appellant she wanted to get out of the vehicle. Still acting under the guise of being a police officer, the appellant threatened that he would arrest the victim if she did not have sex with him. The appellant then grabbed onto the victim's wrist tightly and prevented her from leaving the vehicle until he arrived at the location where he intended to rape her. The record also reveals that the appellant would stop assaulting the victim and restrain her by squeezing her neck, in order to avoid being discovered by vehicles which were passing by.
 {¶ 58} We find that the victim's restraint was prolonged, her confinement secretive, and her movement substantial enough to create a separate animus to support both a conviction for rape and a conviction for kidnapping. Furthermore, the trial court speaks through its journal entry and merely stated at the sentencing hearing that it believed the offenses would merge. The trial court did not specifically state that it would merge the offenses. The appellant's fourth assignment of error is overruled.
 {¶ 59} "V. Mr. Speed received the ineffective assistance of counsel with respect to the hearing on whether there was evidence to sustain a finding that mr. speed is a sexually violent predator under R.C. 2971.01."
 {¶ 60} In his fifth assignment of error, the appellant claims his trial counsel was ineffective by stipulating to the predator reports during the sexually violent predator hearing. The appellant claims that had his trial attorney not stipulated to the reports, the police versions of what occurred would not have controlled, and the state would not have been able to prove that the appellant was a sexually violent predator.
 {¶ 61} In Ohio, when reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985), 17 Ohio St.3d 98,477 N.E.2d 1128; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299,209 N.E.2d 164.
 {¶ 62} In order to substantiate a claim on the basis of ineffective assistance of counsel, the defendant must show, first, that counsel's performance was deficient, and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. State v. Jones (2001),91 Ohio St.3d 335, 354, 744 N.E.2d 1163, citing Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, L.Ed.2d 674. To show such prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.
 {¶ 63} "Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. `An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365 (1981).'"Strickland, supra, at 691.
 {¶ 64} A sexually violent predator is defined by R.C.2971.01(H)(1) as being "a person who has been convicted of or pleaded guilty to committing * * * a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." Rape is a sexually violent offense, as is kidnapping where the offender is also convicted of a sexual motivation specification. R.C. 2971.01(H)(2) sets forth the following factors which may be considered in making a sexually violent predator determination: "(a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.
 {¶ 65} "(b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.
 {¶ 66} "(c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.
 {¶ 67} "(d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.
 {¶ 68} "(e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.
 {¶ 69} "(f) Any other relevant evidence."
 {¶ 70} The standard of proof applicable to a determination of whether an offender is guilty of a sexually violent predator specification is proof beyond a reasonable doubt. State v.Jones (2001), 93 Ohio St.3d 391, 754 N.E.2d 1252. We review the findings in terms of sufficiency. State v. Rome (Dec. 27, 2001), Cuyahoga App. No. 78645, 2001 Ohio App. Lexis 5925.
 {¶ 71} In the instant matter, the record reveals the appellant has a prior history of convictions for violent sexual offenses. In 1987, the appellant was charged with the rape of a co-worker. He eventually pleaded to sexual battery and was placed on probation. Later that same year, the appellant was charged and convicted of raping another woman. The rape of N.S. constituted the third time the appellant has been charged and convicted of a violent sexual offense.
 {¶ 72} The trial court also considered other relevant evidence in making its determination. The trial court examined the Court Psychiatric Evaluation and found that the appellant has a medium to high risk to commit a sexually orientated offense in the future. The trial court also gave consideration to the trial testimony of the victim.
 {¶ 73} Nothing in the record indicates that the trial court relied solely on police statements about what events occurred leading up to the 1987 convictions. Nor are the specific facts of the 1987 offenses relevant pursuant to R.C. 2971.01 (H)(2)(a). As long as the appellant committed two or more sexually violent offenses, i.e. a sexual battery and a rape, and is likely to commit a sexually orientated offense in the future, he is subject to being adjudicated a sexually violent predator. Furthermore, it is irrelevant whether or not the appellant's trial counsel stipulated to the predator report because it would have been proper for the trial court to use the report in assessing the appellant's future likelihood to engage in sexual offenses. Therefore, even assuming that trial counsel was deficient for stipulating to the predator report, we cannot say that, absent the deficiency, the outcome of the hearing would have been different; no prejudice resulted from the stipulation. The appellant's fifth assignment of error is overruled.
 {¶ 74} "VII. The trial court erred when it sentenced Mr. Speed to seventeen months imprisonment for each of counts eight and nine."
 {¶ 75} "VI. The trial court erred when it failed to advise Mr. Speed of the consequences attendant to the imposition of a term of post-release control."
 {¶ 76} The appellant claims in his seventh assignment of error that the trial court erred when it sentenced him to seventeen months incarceration on each count of impersonating a police officer when two of the four counts were misdemeanors. The appellee concedes this issue.
 {¶ 77} A sentence that exceeds the proscribed statutory maximum is void ab initio; therefore, we vacate the imposed sentence and remand this case for resentencing. The appellant's seventh assignment of error is therefore sustained, rendering the appellant's sixth assignment of error moot.
 {¶ 78} Convictions affirmed; sentence vacated and remanded for resentencing.
 {¶ 79} This cause is affirmed in part, vacated in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J., and Rocco, J., concur.