JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Willie Speed was convicted after a bench trial of two counts of rape, one count of attempted rape, three counts of kidnapping, four counts of impersonating a police officer, and one count of possession of criminal tools. The court also found Speed guilty of a sexually violent predator specification. He was sentenced to a total term of incarceration of nine years to life in prison.
 {¶ 2} Speed appealed his conviction in State v. Speed, Cuyahoga App. No. 83746, 2004-Ohio-5211. This court upheld Speed's conviction, but vacated his sentence and remanded the matter to the trial court for resentencing.
 {¶ 3} Speed then filed two pro se petitions for postconviction relief, raising claims of ineffective assistance of counsel. The State filed a motion to dismiss the petitions on grounds that the claims asserted were barred by the doctrine of res judicata. The trial court granted the State's motion, holding that Speed's claims were indeed barred by the doctrine.
 {¶ 4} In his petition for postconviction relief, Speed attached his own lengthy affidavit, the contents of which allege essentially the following facts:
 {¶ 5} 1. That in 2003 (the year of the crime), Speed lived in Lakewood, Ohio and worked for VDAV (Voice Data Audio Video).
 {¶ 6} 2. That on March 25, 2003 at 11:30 p.m. (the date and time of the crime), he began work on a computer at the home of Ms. Yolanda Humphries-Monroe and remained there until 4 a.m. the following day. Both Ms. Humphries-Monroe and her husband were present with Speed until the work was completed.
 {¶ 7} 3. On March 31, 2003, Speed was contacted by a Cleveland Police Detective who was investigating a rape. The detective informed Speed that the victim had reported that someone impersonating a police officer had raped her and that she had gotten the license number of the car. The detective wanted to know if either Speed or his girlfriend owned a 1995 Ford Contour; Speed's response was in the negative. The detective told Speed that he had gone to his girlfriend's house and found the plate described by the victim, but it was attached to a 1999 Ford Taurus. The detective gave Speed his card and left.
 {¶ 8} 4. Approximately one week later, having heard nothing concerning this investigation, Speed called the detective and was informed that there was a warrant for his arrest. Speed agreed to turn himself in at 2:00 p.m. that day, but before he could do so, he was arrested by Lakewood Police.
 {¶ 9} 5. At arraignment in this matter, Speed was found to be indigent and counsel was assigned. Speed informed his counsel of the alibi witness, Ms. Yolanda Humphries-Monroe. According to Speed's affidavit, counsel promised to investigate the alibi.
 {¶ 10} 6. On June 19, 2003, the Court ordered that Speed provide a DNA sample, and he complied. The matter was set for trial on July 24, 2003, but results of the DNA testing were not back and, accordingly, trial was continued until August 21, 2003.
 {¶ 11} 7. On August 21, 2003 (the first day of trial), the DNA results were opened in court. The DNA excluded the defendant. Trial in the matter was then postponed until August 26, 2003.
 {¶ 12} 8. In the meantime, prosecutor Mark Mahoney asked the trial judge to recuse herself. She did not. Trial was then delayed again because the victim had apparently suddenly become reluctant to testify.
 {¶ 13} 9. Given the DNA results and the "reluctant witness," defense counsel prevailed upon Speed to waive a jury trial and try his case to the bench. According to Speed's affidavit, counsel assured him that with a reluctant witness and exculpatory DNA evidence, he could not possibly be convicted. It was apparently at this point that counsel sent defendant's alibi witness home.
 {¶ 14} 10. When trial commenced, the victim was present. The prosecutor asked her to explain to the court why the DNA taken from her in the rape kit did not match that of the defendant. For the first time, she stated that after the rape she had gone to an emergency room, got tired of waiting, and left to go home. She further stated that when she got home, she showered and "scrubbed like she never had before." She stated further that before she went back to the hospital for examination, she had consensual sex with a man named Jerome, the owner of Gene's Drive-Thru. She claimed that she had hidden this fact from police because Jerome was married with children, and she did not want to get him in trouble.
 {¶ 15} 11. Subsequent to the trial, Speed received information that Jerome would testify that he was not in a relationship with the victim, that he did not have sex with her that night, and that he was not married and had no children.
 {¶ 16} 12. Upon advice of counsel, Speed did not testify at trial. In fact, he put on no case whatsoever.
 {¶ 17} Speed's ineffective assistance of counsel claim was premised upon trial counsel's failure to call Ms. Yolanda Humphries-Monroe as an alibi witness for Speed. Speed's affidavit averred that his counsel had been made aware of this witness, and "took Mrs. Humphries-Monroe, a witness for the defense, with him out of the courtroom." When trial commenced, counsel told the court that he would not be calling any witnesses. Speed asked counsel why he was not calling the witness, and counsel replied that her testimony would be unnecessary in light of DNA results that excluded Speed as the source of semen found in the victim.
 {¶ 18} While it is true that issues that could have been raised on direct appeal cannot be raised in a petition for postconviction relief,State v. Steffen (1994), 70 Ohio St.3d 399, 410, 1994-Ohio-111, the issue raised by appellant herein concerns matters outside of the record and hence could not have been considered on direct appeal.
 {¶ 19} If an ineffective assistance of counsel claim concerns facts that are outside the record, an appellate court cannot consider the claim on direct appeal because a court can only consider matters contained in the record. State v. Smith (1985), 17 Ohio St.3d 98, 101, fn.1 Therefore, res judicata does not bar a defendant from raising an ineffective assistance of counsel claim in a petition for postconviction relief if the claim is based upon evidence outside the record. This principle applies even though the issue of ineffective assistance of counsel was raised on direct appeal relating to matters that were in the record. Id.
 {¶ 20} Here, the court erred by finding that the allegations relating to the alibi witness were barred by res judicata. Because the witness did not testify at trial, and the substance of Speed's discussions with counsel were not part of the record, the matter could not have been raised on direct appeal because it involved matters outside the record.State v. Perry (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus.
 {¶ 21} Despite its finding that Speed's claim was barred by res judicata, the trial court then proceeded to find that defense counsel was not ineffective in failing to call the alibi witness, even after the victim unexpectedly changed the story she had given to police and testified that she had consensual intercourse with a man named Jerome after the rape but before the hospital examination.
 {¶ 22} The issue is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant and, if so, whether that ineffective performance prejudiced Speed. State v.Bradley (1989), 42 Ohio St.3d 136.
 {¶ 23} We review counsel's trial performance with a strong presumption that counsel gave reasonable, professional assistance. Id. at 142. In order to overcome the presumption of counsel's competency, Speed is required to submit sufficient operative facts or documents that, ifproven, would show that he was prejudiced. State v. Smith (1987),36 Ohio App.3d 162, 163. We particularly note the wording "if proven." The affidavits and documents themselves do not have to prove, butif proven (presumably at a hearing), must show that defendant was prejudiced.
 {¶ 24} When reviewing affidavits submitted by a petitioner seeking postconviction relief, the court may "judge their credibility in determining whether to accept the affidavits as true statements of fact."State v. Calhoun, 86 Ohio St.3d 279, 284, 1999-Ohio-102. This assessment of credibility should be based on all available factors, including whether 1) the judge reviewing the petition also presided at the trial; 2) multiple affidavits appear to have been drafted by the same person; 3) an affidavit contains hearsay; 4) the affiants are persons interested in the success of the petitioner's effort; and 5) an affidavit either contradicts evidence offered by the defense at trial, contradicts evidence in the record given by the same witness, or is internally inconsistent and thus weakened in credibility. Id.
 {¶ 25} Here, the judge reviewing the petition presided at the trial, there is only one affidavit, and the affiant is the defendant — a person obviously interested in the success of the endeavor. Speed's affidavit does in fact contain hearsay (what others might testify to if called to a hearing), but none of the evidence contradicts evidence offered by the defense at trial or evidence in the record given by the same witness, nor is it internally inconsistent, and thus weakened in credibility. In fact, if at a hearing upon the motion for postconviction relief these witnesses (Ms. Humphries-Monroe and "Jerome") were credible and believable, the defendant would be wholly exonerated.
 {¶ 26} It is important to note that Speed's petition was filed pro se, the trial court having ignored Speed's filed requests for assistance of legal counsel and affidavit of indigency. The petition contained Speed's affidavit that referenced Ms. Humphries-Monroe's affidavit, but did not contain the affidavit itself. Speed's Motion for Leave to FileAdditional Exhibits to Support Assignments of Error Instanter was granted by this court on May 4, 2005 and contains Ms. Humphries-Monroe's affidavit. Her affidavit was notarized in January 2004 and hence, was clearly in existence at the time Speed filed his petition for postconviction relief. It was referenced in Speed's affidavit, but not attached. To hold that Speed is not entitled to a hearing based upon such a hypertechanicality would be a grave miscarriage of justice.
 {¶ 27} Finally, any assertion that the trial judge is in a position to assess the credibility of Ms. Humphries-Monroe or the defendant because she presided over the trial is disingenuous at best. Neither Ms. Humphries-Monroe nor Speed testified at trial. The information that Speed seeks to present to the court has never before been seen, heard or cross-examined. Given the extraordinary lack of otherwise credible evidence in this case, it is imperative that Ms. Humphries-Monroe's evidence be presented and put to the test.
 {¶ 28} Serious issues have been raised in appellant's motion for post conviction relief based upon the claim of ineffective assistance of counsel that need resolution by hearing. A prophylactic "we do not second guess the tactics of trial counsel" may be an adequate and appropriate response to most such claims. Here, however, it would appear that the victim and the defendant are strangers to one another. It likewise appears that Speed's alibi witness was present and ready to testify at trial, and that, if believed, her testimony would have exonerated him. Speed states that he was told by counsel that Ms. Humphries-Monroe was "sent away because her testimony was not needed." That, of course, makes no sense whatsoever — especially in light of the verdict. There is no legitimate trial tactic apparent here. There could be reasons other than that expressed by counsel to his client as to why Ms. Humphries-Monroe did not testify, such as the fact that counsel failed to file a notice of alibi and may have been precluded from presenting the witness. If that in fact were the case, counsel was clearly ineffective. Nonetheless, especially in light of the constantly changing testimony of the victim in this case, due process demands that the trial court at least listen to an explanation from trial counsel as to his reasons for not calling the witness, listen to the witness herself, and then judge whether failure to call the witness was a tactic that misfired or was, in fact, ineffective assistance of counsel so egregious as to deprive the defendant of his right to a fair trial.
Reversed and remanded.
This cause is remanded for further proceedings consistent with the opinion herein.
It is, therefore, ordered that appellant recover from appellee costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., concurs in judgment only.
 Corrigan, J., dissents with separate dissenting opinion.
 DISSENTING OPINION