JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant, Michael Goza, appeals his convictions for burglary, aggravated burglary, attempted rape, gross sexual imposition, and kidnapping. After a thorough review of the arguments, and for the reasons set forth below, we affirm.
 {¶ 2} On June 16, 2006, appellant was indicted on eight counts. Count 1 charged burglary, under R.C. 2911.12; Counts 2 and 3 charged aggravated burglary, under R.C. 2911.11; Count 4 charged attempted rape, under R.C. 2923.02/2907.02; Count 5 charged rape, under R.C. 2907.02; Count 6 charged gross sexual imposition, under R.C. 2907.05; and Counts 7 and 8 charged kidnapping, under R.C. 2905.01. The kidnapping and burglary charges carried repeat violent offender specifications based on a 1997 felonious assault conviction.
 {¶ 3} A jury trial began on September 19, 2006, and on September 25, 2006, the jury found appellant guilty of all charges, except rape. Before sentencing, the court merged the charges of aggravated burglary, attempted rape and kidnapping, and gross sexual imposition and kidnapping. The court sentenced appellant to a mandatory six-year term on Count 1, to be served consecutively to a ten-year term on Counts 2 and 3. That ten-year term was to be served consecutively to another ten-year term on Counts 4 and 7, which was to be followed by another consecutive term of five years on Counts 6 and 8. Appellant received a total sentence of 31 years. *Page 4 
 {¶ 4} The facts that lead to this appeal occurred on March 26, 2006. At 4:00 a.m., nine-year-old C.A.[1] awakened her mother and stepfather, Coral and Robert, to inform them that a man had just "tried to rape" her. C.A. told her parents that she woke up without her pants or underwear on. She saw a white man on her bed, beginning to remove his own pants. C.A. kicked him, screamed, and yelled "no." Nevertheless, the suspect continued to lean over her as C.A. fought him. Unsuccessful in raping her, he said, "Fine, I'll get out, but if you tell anyone, I'll hurt you."
 {¶ 5} Robert checked the house to make sure the attacker was gone. He found C.A.'s sister, three-year-old K.J., sleeping in the bunk bed the two girls shared. Robert also checked on his stepson, A.A., and went into the unoccupied room of his 15-year-old stepdaughter, T.A. The floor and bed in T.A.'s room were damp, her window screen was partially open, and the window was unlocked. Robert immediately called the police. C.A. and her mother went to the hospital. C.A. told the sexual assault nurse examiner, Nancy Hedberg ("nurse Hedberg"), the same information she had given her parents. *Page 5 
 {¶ 6} While C.A. was at the hospital, police investigated the scene of the attack. Det. Charles Teel found five fingerprints on the window in T.A.'s room (the suspected point of entry), but found no prints on C.A.'s bed.
 {¶ 7} Later that morning, K.J. woke up and told her father, "Daddy, don't do that to me no more. I don't like what you did. You hurt my vagina." Her parents, particularly Robert, were shocked. Coral suspected that K.J. was just confused because Robert matched the suspect's physical description. Coral told K.J. that C.A. was also hurt that night, and that it was not Robert who had hurt them. Robert called the police again. Coral and Robert took K.J. to the hospital. Nurse Kathleen Goellnitz ("nurse Goellnitz") said K.J. told her that a "bad man" had put his fingers in her underwear. K.J. told nurse Goellnitz that her vagina hurt and she had not liked it. K.J. reenacted what had happened. She stated, "I was sleeping in my bed and the bad man hurt me."
 {¶ 8} Nurse Goellnitz testified that she did not believe Robert was the attacker because of K.J.'s positive interaction with him, and that she would not have released K.J. to her parents if she felt that the father had harmed her. Nurse Goellnitz testified that K.J. probably thought her father harmed her because he was the only male in the house, and she did not understand that someone else had come into the house.
 {¶ 9} On March 27, 2006, Lawrence Petrus ("the social worker"), a member of the Cuyahoga County Children and Family Services Sex Abuse Intake *Page 6 
Department, interviewed C.A. and K.J. C.A. told him that she awoke to a man pulling her underwear down. She said after she began crying, the man threatened her to keep quiet. She tried to fight him off, and ultimately he left. K.J. told the social worker that "there was a bad man" in her room. The man had asked her to hold his penis, and he had put his finger against her vagina. The social worker determined that the statements that implicated Robert were untrue because there was no evidence that he abused K.J.
 {¶ 10} A few days later, Robert and Coral went to visit T.A. at New Directions, the drug rehabilitation facility where she was living. After hearing what had happened to her sisters, T.A. told her parents that, one night, while sleeping in her bedroom at their house, she awoke to find a man in her room. Robert called the police to advise them of this incident.
 {¶ 11} Detective James McPike of the Cleveland Police Department took T.A.'s statement. T.A. told the detective that appellant was the man who entered her room that night. She stated that she and the 33-year-old appellant were friends. Appellant had told T.A. that he was interested in a romantic relationship and began touching her inappropriately. Despite T.A.'s rejection, he continued to pursue her.
 {¶ 12} While she was home visiting on March 10, 2006, T.A. awoke at 2:00 a.m. to find appellant in her bed. He told her he had come through her bedroom window on the north side of the house (different from the window C.A. and K.J.'s attacker used over two weeks later). Appellant told her he came by her window in *Page 7 
the morning on previous occasions to see if she was awake. He began touching her legs, chest, and stomach. Although he was ordered to leave, appellant began telling T.A. that he loved her and stayed for one-half hour.
 {¶ 13} Det. McPike asked the crime lab to compare appellant's fingerprints with the prints found on the point-of-entry window. After learning that the prints matched, he put together a six-man photo array, which consisted of appellant and five similar looking men, and took it to the victims' home. C.A. immediately selected appellant's photo; she also identified appellant as her attacker at trial.
 {¶ 14} T.A. told Det. McPike where appellant lived, and the detective obtained a search warrant and an arrest warrant for aggravated burglary and attempted rape. On April 13, 2006, after Det. McPike was unable to serve the warrants because appellant was not home, appellant turned himself in to the police.
 {¶ 15} Appellant's fiancee, Sheari Connor, testified that appellant was with her at 4:00 a.m. on March 26, 2006.
 {¶ 16} Appellant brings this appeal, asserting six assignments of error for our review.
 Insufficient Evidence {¶ 17} "I. Appellant was deprived of his liberty without due process of law, where the evidence adduced at trial was insufficient to support his conviction for attempted rape." *Page 8 
 {¶ 18} Appellant argues that there was insufficient evidence to convict him of attempted rape of C.A. More specifically, he argues that there was no physical evidence that he was the man who attempted to rape C.A., that he intended to rape her, or that an attempted rape occurred. We disagree.
 {¶ 19} In State v. Jenks (1991), 61 Ohio St.3d 259, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 {¶ 20} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979],443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" Id. at paragraph two of the syllabus.
 {¶ 21} More recently, in State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, 678 N.E.2d 541, the Ohio Supreme Court stated the following with regard to "sufficiency" as opposed to "manifest weight" of the evidence:
 {¶ 22} "With respect to sufficiency of the evidence, `"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict *Page 9 
as a matter of law.' Black's Law Dictionary (6 Ed.1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v.Robinson (1955), 162 Ohio St. 486, 55 Ohio Op. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982),457 U.S. 31, 45, 102 [*387] S.Ct. 2211, 2220, 72 L.Ed. 2d 652, 663, citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781,61 L.Ed. 2d 560." Id. at 386-387.
 {¶ 23} Finally, we note that a judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case.Cohen v. Lamko (1984), 10 Ohio St.3d 167, 462 N.E.2d 407.
 {¶ 24} Where there is substantial evidence upon which the trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the jury as to the weight and sufficiency of the evidence. State v. Nicely (1988), 39 Ohio St.3d 147. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact to determine. State v. DeHass
(1967), 10 Ohio St.2d 230.
 {¶ 25} First, appellant argues there is insufficient evidence of the attacker's identity; however, it is clear that there was enough physical evidence of the *Page 10 
attacker's identity. Appellant's fingerprints were found on the window in T.A.'s room. C.A. also picked appellant out of a six-man photo array and testified that appellant was her attacker.
 {¶ 26} Appellant also argues that there was insufficient evidence that he intended to rape C.A. or that an attempted rape occurred. "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C.2907.02(A)(2). Attempted rape is "conduct that, if successful, would * * *" result in rape. R.C. 2923.02(A). An attempt has been made when one purposely does an act constituting a substantial step in a course of conduct planned to complete the crime. A substantial step includes conduct "strongly corroborative of the actor's criminal purpose."State v. Woods (1976), 48 Ohio St.2d 127, 132, 35 N.E.2d 1052.
 {¶ 27} Here, the evidence is clear that appellant took a substantial step and intended to rape C.A. In State v. Powell (1990),49 Ohio St.3d 255, 261, 552 N.E.2d 191, the Ohio Supreme Court held that ordering a seven-year-old girl to remove her clothes "strongly corroborates his criminal purpose to engage in sexual conduct with her, and is thus a substantial step * * *." C.A. awoke laying on her back with her jeans and underwear pulled off. Her legs were spread apart. She saw appellant sitting between her legs on the bed. Appellant then put his hands on his pants' zipper and C.A. began pleading with him to stop. Even after C.A. kicked him, *Page 11 
appellant continued to tower over her. Because C.A. continued to fight him off, appellant reluctantly left.
 {¶ 28} In State v. Robinson (May 23, 1990), Hamilton App. No. C-890147, the Ohio Supreme Court found that, even though there was no semen found on the victim's body, an attempted rape had occurred. In that case, the defendant was also positioned between the victim's lower legs and did not leave until caught by a third party.
 {¶ 29} Appellant specifically challenges a lack of physical evidence and argues that under State v. Powell, supra, a defendant cannot be convicted of attempted rape solely on evidence that he removed the victim's clothing. While there was no DNA evidence found on C.A.'s body, lack of such evidence is not evidence that the attempted rape did not occur. State v. Speed, Cuyahoga App. No. 83746, 2004-Ohio-5211. Further, there was clearly more evidence than removal of clothing in this case. First, appellant's fingerprints were found at the suspected point-of-entry. Secondly, credibility is usually a deciding factor in attempted rape convictions. Id. Here, C.A.'s account of her attack is extremely credible. She told the same story consistently throughout this ordeal, and she did not know appellant beforehand.
 {¶ 30} After evaluating the evidence in a light most favorable to the prosecution, we hold that there was sufficient evidence to convict appellant of attempted rape. Accordingly, appellant's first assignment of error is overruled.
 Hearsay Testimony *Page 12 {¶ 31} Because assignments of error two and three are substantially interrelated, they will be addressed together.
 {¶ 32} "II. Appellant was deprived of his Sixth Amendment right to confront witnesses when the trial court allowed the state to introduce the uncross-examinable (sic) hearsay statements of a three year old.
 {¶ 33} "III. The trial court committed reversible error and violated Mr. Goza's right to a fair trial under the Sixth andFourteenth Amendments of the Constitution when it admitted hearsay that did not fall within any exception to the well-settled rule prohibiting its admission."
 {¶ 34} Appellant argues that the trial court erred when it admitted hearsay statements. More specifically, he contends that the trial court erred when it introduced statements that K.J. made to the social worker and nurse Goellnitz. We disagree.
 {¶ 35} As appellant correctly states, the Sixth Amendment to the United States Constitution guarantees all criminal defendants the right to confront the witnesses against them. The Confrontation Clause provides a constitutional safeguard to ensure that a criminal defendant will not be convicted of a crime based on the charges of unseen, unknown, and unchallengeable witnesses. Lee v. Illinois (1986),476 U.S. 530, 540, 106 S.Ct. 2056, 90 L.Ed.2d 514; State v. Gilliam (1994),70 Ohio St.3d 17, 19, 635 N.E.2d 1242. However, "where non-testimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in *Page 13 
their development of hearsay law * * * as would an approach that exempted such statements from Confrontation Clause scrutiny altogether."Crawford v. Washington (2004), 541 U.S. 36, 68, 124 S.Ct. 1354,159 L.Ed.2d 177. Thus, Crawford only applies to hearsay statements that are not subject to any hearsay exceptions. State v. Banks, Franklin App. No. 03AP-1286, 2004-Ohio-6522.
 {¶ 36} Under Evid.R. 801(C), "hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(B) defines "declarant" as a "person who makes a statement"; and a "statement," as defined in Evid.R. 801(A), is: "(1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion."
 {¶ 37} Hearsay evidence is generally inadmissible, unless an exception is determined to be applicable. Evid.R. 803(4) provides that "statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment" are an exception to the hearsay rule.
 K.J.'s Statements to the Social Worker {¶ 38} K.J. spoke to the social worker regarding her attack. Appellant argues that the interview was conducted with Det. McPike, thus excluding it from the medical treatment exception; however, this is factually untrue. The social worker *Page 14 
interviewed K.J. alone; Det. McPike only interviewed C.A. Appellant also argues that the social worker's interview cannot be considered "for the purpose of medical diagnosis or treatment" because K.J. had already been examined by the nurse at the hospital. The social worker's job went beyond the nurse's job. His duties included determining whether K.J. needed medical care or psychological help. As such, it is clear that the interview was for the purpose of medical diagnosis.
 {¶ 39} Further, in child abuse cases, testimony is admissible from non-medical personnel under Evid.R. 803(4), as long as those statements were made in the course of physical or psychological treatment.State v. McWhite (June 14, 1991), 6th Dist. No. L-89-303. Also, this court has held that young rape victims' statements made to social workers are admissible under Evid.R. 803(4). State v.Kurpik, Cuyahoga App. No. 80468, 2002-Ohio-3260. However, the statements made to a social worker must be for diagnosis or treatment. State v.Chappell (Dec. 5, 1994), Cuyahoga App. No. 66501. Because K.J.'s statements to the social worker were clearly for the purposes of diagnosis and treatment, they are admissible under Evid.R. 803(4).
 K.J.'s Statements to Nurse Goellnitz {¶ 40} Appellant also challenges the admissibility of statements K.J. made to nurse Goellnitz at Fairview General Hospital. Generally, statements made by sexual abuse victims to nurses are considered non-testimonial. In re D.L., Cuyahoga App. No. 84643, 2005-Ohio-2320. Patients are naturally motivated to be truthful with their *Page 15 
[health care professionals] so that they may obtain effective treatment.State v. McWhite (June 14, 1991), 6th Dist. No. L-89-303. Admitting such statements usually depends on the declarant's perception while making the statements. State v. Jennings, Clark App. 2002-CA-78, 2003-Ohio-4429. Here, K.J. was seeing nurse Goellnitz because of her attack. She did not perceive the possibility of her statements being used in a trial. In fact, she probably does not know much about trials or the criminal justice system. She spoke to nurse Goellnitz believing that the nurse would help her after her terrible ordeal. Because K.J.'s statements to nurse Goellnitz were clearly for the purpose of diagnosis and treatment, and not made in anticipation of prosecution, they are admissible under Evid.R. 803(4).
 {¶ 41} Because K.J.'s statements to the social worker and the nurse were clearly for the purpose of diagnosis and treatment, they were properly admitted under Evid.R. 803(4). Accordingly, appellant's second and third assignments of error are overruled.
 Competency of Witness {¶ 42} "IV. The trial court violated Mr. Goza's rights to due process and a fair trial under the Sixth and Fourteenth Amendments of the Constitution by failing to ascertain the competency of the three year old witness whose hearsay accusations were subsequently admitted against Mr. Goza at trial."
 {¶ 43} Appellant argues that the trial court erred when it failed to ascertain K.J.'s competency. We disagree. *Page 16 
 {¶ 44} Under Evid.R. 601(A), "every person is competent to be a witness except: those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly. * * *." However, it is important to note that where testimony is admissible under Evid.R. 803(4), it is not a condition precedent that the child be determined competent. State v. Edinger, Franklin App. No. 05-AP-31, 2006-Ohio-1527. Furthermore, statements made by a child for medical diagnosis or treatment are admissible regardless of the competency of the child. In re D.L., Cuyahoga App. No. 84643,2005-Ohio-2320. Therefore, we hold that appellant's argument that the trial court erred when it failed to determine K.J.'s competency is without merit.
 {¶ 45} Nonetheless, it is also clear that K.J. was competent. Evid.R. 601 has two parts: whether the child could receive impressions of the facts and transactions, and whether the child can truly relate facts and transactions. State v. Ulis (Nov. 5, 1993), 6th Dist. No. L-90-264. Appellant questions whether K.J. "is competent to communicate the truth." Therefore, he is questioning whether K.J. can truly relate the facts. It is clear from the record that K.J. had no difficulty relating the facts to the nurse and social worker. K.J. had demonstrated a mature vocabulary and was able to easily identify body parts in explaining her attack.
 {¶ 46} Appellant also argues that the trial court erred when it failed to determine K.J.'s competency when she made her statements to the nurse and the *Page 17 
social worker. However, a competency exam is required only when that child is called to be a witness at trial. State v. Storch (Sept. 30, 1991), 6th Dist. No. E-90-18. K.J. was not called to be a witness in this case. Because a determination of competency is not necessary in this situation, the trial court did not err by failing to ascertain her competency. Accordingly, appellant's fourth assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 47} Because assignments of error five and six are substantially interrelated, they will be addressed together.
 {¶ 48} "V. Appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution when his counsel failed to challenge the nine-year-old child's identification of him as her attacker or to otherwise challenge the reliability of that identification.
 {¶ 49} "VI. Appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution because he failed to object to the introduction of medical records which improperly bolstered the children's respective accounts of alleged sexual misconduct." *Page 18 
 {¶ 50} Appellant argues that he was denied effective assistance of counsel regarding C.A.'s identification of him as her attacker and the improper introduction of medical records. His arguments are without merit.
 {¶ 51} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144.
 {¶ 52} In reviewing a claim of ineffective assistance of counsel, itmust be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98; Vaughn v. Maxwell (1965), 2 Ohio St.2d 299.
 {¶ 53} The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley (1989),42 Ohio St.3d 136, that:
 {¶ 54} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant'sSixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."State v. Lytle *Page 19 
(1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498, 358 N.E.2d 623,627, vacated in part on other grounds (1978), 438 U.S. 910.
 Failure to File Motion to Suppress Identification {¶ 55} Failure to file a motion to suppress may constitute ineffective assistance of counsel if there is a solid possibility that the court would have suppressed the evidence. State v. Pimental, Cuyahoga App. No. 84034, 2005-Ohio-384. Courts apply a two-prong test to determine the admissibility of challenged identification testimony. First, the defendant bears the burden of demonstrating that the identification procedure was unduly suggestive. To meet this burden, the defendant must show that the procedure was unduly suggestive and resulted in an unreliable identification. Unreliable means that the suggestive procedure is capable of resulting in an irreparable mistaken identity.Simmons v. United States (1968), 390 U.S. 377, 384, 88 S.Ct. 967,19 L.Ed.2d 1247; State v. Page, Cuyahoga App. No. 84341, 2005-Ohio-1493.
 {¶ 56} To determine if the procedure was impermissibly suggestive, the courts look at the totality of the circumstances, including the victim's opportunity to view the defendant during the offense, her degree of attention, the accuracy of descriptions given to the police, her level of certainty, and lapse of time from the event to the time of identification. State v. Caldwell (Sept. 27, 1984), Cuyahoga App. No. 45112. Then, even if the court finds the procedure suggestive, the identification would still *Page 20 
be admissible if the identification itself was adequately reliable.State v. Moody (1978), 55 Ohio St.2d 64, 67, 377 N.E.2d 1008.
 {¶ 57} Appellant argues that the identification process used with C.A. was impermissibly suggestive. This argument is without merit. The only people in the room during the identification process were C.A., her mother, her father, and Det. McPike. T.A. did not, as appellant suggests, tell C.A. appellant's name beforehand. Appellant also contends that because C.A. said she did not see her attacker's face, the identification was impermissibly suggestive. Appellant's argument is not well-supported. The photo array included appellant and five other men who resembled him. C.A. was told she did not have to choose anyone if she could not identity her attacker; however, she picked appellant within seconds. Because the identification was not impermissibly suggestive, defense counsel should not have filed a motion to suppress, and there is no claim for ineffective assistance of counsel.
 Failure to Use an Eyewitness or Memory Expert {¶ 58} Appellant argues that his counsel was ineffective because he failed to consult an eyewitness or memory expert. Consulting such an expert is "well within the standard of reasonable trial tactics."State v. Day, Cuyahoga App. No. 79368, 2002-Ohio-669. Ordinarily, the use of trial tactics does not constitute a denial of effective assistance of counsel. State v. Briscoe (Nov. 22, 2000), Cuyahoga App. No. 77832. Because calling witnesses is within the realm of trial tactics, defense counsel did not have a duty to call an expert witness. *Page 21 
 {¶ 59} C.A. was a very reliable witness, whose story remained unchanged throughout the whole ordeal. It was not unreasonable for trial counsel to determine that an expert was not needed. Therefore, the claim for ineffective assistance of counsel based on failure to call expert witnesses fails.
 Introduction of Medical Records {¶ 60} Appellant also argues that his counsel was ineffective because he failed to object to the introduction of medical records. Statements within medical records are admissible under Evid.R. 803(4). Further, both nurses testified at trial. Appellant was able to cross-examine them about statements made in the medical records.
 {¶ 61} Because all three of the appellant's arguments in favor of a determination of ineffective assistance of counsel are without merit, it is clear that the performance of defense counsel was not seriously flawed or deficient. Accordingly, appellant's fifth and sixth assignments of error are overruled.
 {¶ 62} Judgment is hereby affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 22 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., ADMINISTRATIVE JUDGE
MELODY J. STEWART, J., CONCURS; COLLEEN CONWAY COONEY, J., CONCURS IN JUDGMENT ONLY.
[1] The minor victims are referred to herein by their initials in accordance with this court's established policy. *Page 1