JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Michael Goza, was convicted after a jury trial of burglary, aggravated burglary, attempted rape, gross sexual imposition, and kidnapping and sentenced to 31 years incarceration. The convictions stem from the attempted rape of nine-year-old C.A. and her three-year-old sister, K.J., in the early morning hours of March 26, 2006, as they were sleeping at home in the bedroom they shared. Goza's fingerprints were obtained from an unlocked bedroom window and C.A. identified Goza from a photo array as the man who had attacked her. In addition, T.A., C.A.'s 15-year-old sister, testified at trial that on March 11, 2006, approximately two weeks before the attempted rape, she had awakened to find Goza in her bed. Goza, who lived across the parking lot from T.A. and her family, told T.A. that he had come through her bedroom window. Although T.A. told him to leave, Goza stayed for nearly half an hour, touching T.A. inappropriately. T.A. told no one of the incident until after the attempted rape of her sisters.[1]
 {¶ 2} This court affirmed Goza's convictions on appeal. Goza, supra. While his appeal was pending, Goza filed a petition for postconviction relief. The trial court found that Goza's claims were barred by the doctrine of res judicata and dismissed Goza's petition without a hearing. He now appeals from the trial court's judgment denying his petition. *Page 4 
I. Postconviction Claims {¶ 3} R.C. 2953.21 through 2953.23 set forth the means by which a convicted defendant may seek to have the trial court's judgment or sentence vacated or set aside. Postconviction relief allows a petitioner to make a collateral civil attack on his criminal conviction by filing a petition to set aside the judgment. The statute affords relief from judgment where the petitioner's rights in the proceedings that resulted in his conviction were denied to such an extent the conviction is rendered void or voidable under the Ohio or United States Constitutions. R.C. 2953.21(A); State v. Perry (1967), 10 Ohio St.2d 175, paragraph four of the syllabus.
 {¶ 4} A hearing is not automatically required on every petition.State v. Stedman, 8th Dist. No. 83531, 2004-Ohio-3298, ¶ 24. The pivotal question is whether, upon consideration of the petition, all the files and records pertaining to the underlying proceedings, and any supporting evidence, the petitioner has set forth "sufficient operative facts to establish substantive grounds for relief." State v. Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102, paragraph two of the syllabus. If the petition, files, and records show that the petitioner is not entitled to relief, the court may dismiss the petition without an evidentiary hearing. R.C. 2953.21(C).
 {¶ 5} A postconviction claim may also be dismissed without a hearing where the claims are barred by res judicata. The doctrine of res judicata *Page 5 
precludes a hearing where the claim raised in the petition was raised or could have been raised at trial or on direct appeal. Perry, supra at paragraph nine of the syllabus. To overcome the res judicata bar, a petitioner must present cogent, material evidence outside the record.State v. Bradley, 8th Dist. No. 88163, 2007-Ohio-2642, ¶ 9, citing State v. Cole (1982), 2 Ohio St.3d 112.
 {¶ 6} We review a trial court's decision on a petition for postconviction relief for an abuse of discretion. State v. White, 8th Dist. No. 90544, 2008-Ohio-4228, ¶ 19, citingCalhoun, supra. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
II. Goza's Postconviction Claims {¶ 7} Goza asserted three arguments in his petition for postconviction relief. He contended that he was entitled to a new trial because 1) the State violated its duty under Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, to disclose exculpatory evidence; 2) he was denied his Sixth Amendment right to effective assistance of counsel; and 3) in light of the alleged "new evidence," his conviction was not supported by sufficient evidence. We analyze each claim separately.
A. Exculpatory Evidence *Page 6 {¶ 8} Under Brady, supra, the government must disclose any evidence favorable to the defense or detrimental to the government's own case. Suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or punishment, regardless of the good or bad faith of the prosecution. Id. at 86-88; State v. Johnston (1988), 39 Ohio St.3d 48, paragraph four of the syllabus.
 {¶ 9} In his postconviction petition, Goza contended that he was entitled to a new trial because the State failed to disclose the police report, which reported that immediately after the attempted rape, C.A. identified a man named Richard Givens as the man who attempted to rape her. In an affidavit attached to Goza's postconviction petition, counsel averred that "this information was never passed on to me and the first time I knew about it was when I read the pre-sentence report subsequent to the trial. *** [T]he police report containing this information was never provided to me."
 {¶ 10} Because the evidence supporting Goza's Brady claim (i.e., counsel's affidavit) was outside the record, the trial court erred in denying this claim on the basis of res judicata. Nevertheless, counsel's affidavit failed to raise a substantive claim for relief, because the record affirmatively belies counsel's contention that he did not know about C.A.'s identification of Richard Givens until after trial. *Page 7 
 {¶ 11} Information about C.A.'s identification of Givens was contained in the affidavit accompanying the warrant to search Goza's home. The transcript reflects that the search warrant and affidavit were admitted during the State's questioning of detective James McPike at the hearing on Goza's motion to suppress:
 {¶ 12} "Q. Detective, I'm showing you what's been marked for identification as State's Exhibit 104. Do you recognize that exhibit, Detective?
 {¶ 13} "A. Yes.
 {¶ 14} "Q. Can you indicate for the record what that is?
 {¶ 15} "A. The first page is the search warrant return that I typed up. The next couple pages is the search warrant and then, after that, is the attached affidavit. And then, after that, is the search warrant inventory list." (Tr. 21-22.)
 {¶ 16} Detective McPike's affidavit, attached to the warrant, stated, in part:
 {¶ 17} "1. Affiant avers that on March 26, 2006, a Clevleand Police Department ("CPD") zone car responded to *** West 179th
Street, Cleveland, Ohio in response to a call regarding an unknown male in the home. Upon their arrival, CPD officers spoke with ***, the home's occupant, who informed the officers that his nine-year-old daughter, hereinafter referred to as Jane Doe, woke him up about 4:15 a.m. Jane Doe informed [her stepfather] that an unknown male had been on her bed, had removed her pajama pants, and was in *Page 8 
the process of removing her panties when she woke up. Jane Doe kicked and punched the male, and the male left the room.
 {¶ 18} "2. Affiant avers that additional officers responded. Jane Doe provided a description of the male as a white male, light colored hair, tall and thin, wearing a black hooded sweatshirt and blue jeans. The officers contacted Fairview General Hospital, which is located across the street from the scene, to inquire whether a male fitting this description was present. The officers were informed that a male resembling the description had just signed in for treatment.
 {¶ 19} "3. Affiant avers that officers brought the male to the scene where a cold stand was conducted. Jane Doe made a tentative cold standidentification of the male, who was identified as Richard Givens. Givens provided an alibi, which was established as false. Based upon the tentative identification and false alibi or information provided by Givens, Givens was arrested." (Emphasis added.)[2]
 {¶ 20} Detective McPike also testified at trial about his investigation of Givens. Detective McPike testified that Givens had been picked up at Fairview Hospital on March 26, 2006 and arrested as a suspect in the crimes against C.A. and K.J. Detective McPike testified further that as a result of his investigation, *Page 9 
he learned that Givens was at a CVS pharmacy in Garfield Heights, Ohio when the crimes were committed, so Givens was eliminated as a suspect.
 {¶ 21} Because the record clearly refutes Goza's assertion that defense counsel did not know until after trial that C.A. had identified someone other than Goza as her attacker, Goza's petition failed to state a substantive claim for relief on his Brady claim. Therefore, the trial court did not abuse its discretion in denying this claim without a hearing.
B. Ineffective Assistance of Counsel {¶ 22} Goza next alleged in his petition that he was entitled to a new trial because he was denied his Sixth Amendment right to effective assistance of counsel.
 {¶ 23} To secure a hearing in a postconviction proceeding on a claim of ineffective assistance of counsel, the petitioner must proffer evidence demonstrating the lack of competent counsel and that the defense was prejudiced by the deficient performance. State v.Jackson (1980), 64 Ohio St.2d 107, 111. Generally, proffering evidence outside the record of ineffective assistance of counsel is sufficient, if not to mandate a hearing, at least to avoid dismissal on the basis of res judicata. Cole, supra at 114.
 {¶ 24} In his petition, Goza claimed that counsel was ineffective for failing to investigate and present evidence that he was physically incapable of committing the crimes for which he was convicted. Goza argued that he was *Page 10 
severely disabled as a result of a motorcycle accident in 2003, which caused permanent nerve damage and rendered him incapable of activity beyond the most basic ambulatory functions.
 {¶ 25} Goza attached to his petition inpatient records relating to his hospitalization and surgery following the accident, medical records regarding subsequent office visits, and his medical records from the correctional facilities. In addition, he attached a letter from Dr. Clyde L. Nash, Jr., a board certified orthopaedic surgeon with speciality training and experience relating to the spine, in which Dr. Nash opined that his review of Goza's medical records indicated that Goza "would be incapable of committing acts that would require anything more than the most simple of ambulatory functions consistent with his permanent leg paralysis."
 {¶ 26} On appeal, Goza argues that the trial court erred in denying this claim, because his medical records and Dr. Nash's letter indicate that he could not have climbed in and out of a first-floor bedroom window and up and down C.A. and K.J.'s bunk bed, as the prosecution theorized, to commit the crimes. Therefore, he contends, counsel was ineffective for failing to investigate and present evidence of his medical condition to the jury.
 {¶ 27} Because Goza's medical records and Dr. Nash's letter are evidence outside the record, the claim could not have been raised on direct appeal, and the trial court erred in dismissing this claim on the basis of res judicata. *Page 11 
Nevertheless, the trial court did not abuse its discretion in denying this claim, because the evidence failed to set forth sufficient facts to establish a substantial violation of counsel's duty and resulting prejudice.
 {¶ 28} Dr. Nash made no analysis concerning Goza's medical history in relation to the crimes that occurred in this case. He gave no opinion regarding whether Goza could have walked across the parking lot separating his house from C.A.'s and climbed into her home through a first-floor window. Thus, Dr. Nash's letter provides no support for Goza's claim that he was too disabled to commit the crimes of which he was convicted and, therefore, fails to demonstrate that counsel was ineffective for not presenting evidence of Goza's alleged disability to the jury.[3]
 {¶ 29} Goza next contended that his counsel was ineffective for not challenging the eyewitness identification testimony offered in this case. Specifically, Goza contended that counsel should have consulted an expert in the field of eyewitness identification and should have filed a motion to suppress C.A.'s identification. Both of these arguments were raised on direct appeal and therefore are barred by res judicata. SeeGoza, supra, ¶¶ 57-59.
C. New Evidence *Page 12 {¶ 30} Goza's final claim in his petition was that the "new evidence" of his medical history and disability, as well as C.A.'s identification of another man as her attacker, demonstrated that he was wrongfully convicted and that his convictions were based on insufficient evidence.
 {¶ 31} As discussed, C.A.'s identification of Richard Givens as her attacker was not new evidence discovered after trial and the evidence regarding Goza's physical disability does not raise a substantive claim for relief. Accordingly, any claim based on this alleged "new evidence" is without merit.
 {¶ 32} The trial court did not abuse its discretion in dismissing Goza's petition for postconviction relief without a hearing. Accordingly, appellant's assignment of error is overruled.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 13 
MARY J. BOYLE, J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] A more complete statement of facts can be found in State v.Goza, 8th Dist. No. 89032, 2007-Ohio-6837.
[2] Givens was subsequently eliminated as a suspect. His shoe print did not match the shoe print found at the scene and the police investigation determined that he was at a CVS pharmacy in another city when the crimes were committed.
[3] T.A.'s testimony that she woke to find Goza in her bed only two weeks before the attempted rape of her sisters, and Goza's admission to her that he had come in through her bedroom window, are some evidence that Goza was indeed capable of sneaking into the house through an open window. *Page 1