[Cite as *In re Robert M.*, 2011-Ohio-5177.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96278**

# IN RE: ROBERT M.

A Minor Child

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Juvenile Division of
Cuyahoga County Court of Common Pleas
Case No. DL 10115998

**BEFORE:** Blackmon, J., Kilbane, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** October 6, 2011

**ATTORNEY FOR APPELLANT**

Timothy Young
Ohio Public Defender

Brooke M. Burns
Assistant State Public Defender
250 E. Broad Street, Suite 1400
Columbus, Ohio 43215

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

Milko Cecez
Assistant Prosecuting Attorney
Juvenile Division
2210 Cedar Avenue, 3rd Floor
Cleveland, Ohio 44115

PATRICIA ANN BLACKMON, J.:

{¶ 1}  Appellant Robert M.[1] appeals the juvenile court adjudicating him a delinquent minor and committing him to the Department of Youth Services. Robert M. assigns the following errors for our review:

---

[1]The juvenile is referred to herein by his first name and the initial of his last name in accordance with this court's established policy regarding non-disclosure of identities in all juvenile cases.

**"I. Robert M. was denied his right to due process and a fair trial when the State inexplicably lost the photo lineup that was crafted out of the investigating officer's cell phone pictures and used to bolster the victim's identification of Robert as the perpetrator of the crime. Fifth and Fourteenth Amendments to the United States Constitution, Section 16, Article I of the Ohio Constitution."**

**"II. Robert M. was denied his right to due process and a fair trial when the trial court permitted testimony regarding an inherently suggestive and unreliable lineup that was used against Robert even though it was never provided to defense counsel, despite numerous discovery requests, and was never produced at trial."**

**"III. Robert M. was denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution when counsel failed to file a motion to suppress or object to identification evidence, which would have been supported by the trial court."**

**"IV. Robert M.'s adjudication and commitment must be reversed and remanded for a new trial because his adjudication was against the manifest weight of the evidence. Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 16 of the Ohio Constitution."**

{¶ 2} Having reviewed the record and pertinent law, we affirm Robert M.'s adjudication as a delinquent minor. The apposite facts follow.

{¶ 3} On October 24, 2009, Delance Tyler was shot as he stood on his front porch. On August 16, 2010, the state filed a complaint alleging that Robert M. was delinquent of felonious assault with one and three-year

firearm specifications attached; improper discharge of a firearm into a habitation; and carrying a concealed weapon. On September 15, 2010, Robert M. pleaded not guilty at his arraignment. Thereafter, several pretrials were conducted and on December 1, 2010, a bench trial commenced.

## Bench Trial

{¶ 4} At trial, the victim, Tyler, age 41, testified that on October 24, 2009, while on his way home from work, he stopped at a corner store a block from his house. As he exited the store, he heard a lot of noise from across the street. Tyler assumed the noise was coming from kids playing, but moments later he heard footsteps to the side of him and thought it was one of the kids who knew him from the neighborhood.

{¶ 5} Tyler testified that when he turned to look, he saw a young man, later identified as Robert M., who asked him where he was from, and Tyler responded that he lived down the street. Tyler stated that Robert M. said "we about to work," a street parlance indicating that he wanted to fight, and then proceeded to take off his jacket.

{¶ 6} Tyler testified that he told Robert M. that he was not about to fight him because he was old enough to be his father, at which time, eight or nine other boys walked up, and Robert M. suggested that Tyler fight one of the older boys. Tyler refused and continued walking towards his house,

Robert M. and the others followed, and someone shouted "Goonies," the name of a street gang that operates in the neighborhood.

{¶ 7}  As Tyler reached his house and was about to open the door, he found it locked.  He turned around and saw Robert M. at the curb.   Tyler testified that Robert M. produced a gun, proceeded to fire four times, and three bullets hit him in the legs.  Tyler attempted to take cover behind the brick wall on the porch, fully expecting that Robert M. would approach and kill him, but he fled along with the others down the street.

{¶ 8}  Tyler was taken to the hospital and provided a description of his assailant to the police, indicating that he recognized Robert M. from the neighborhood. Tyler subsequently identified Robert M. when he was shown a photo array several months later.

{¶ 9}  Officer William Cunningham, II testified that he interviewed Tyler at the hospital shortly after the shooting took place.   Officer Cunningham testified that Tyler indicated that he recognized the shooter. Officer Cunningham later learned through his investigation in the neighborhood that the shooter's name was "Rob," but that individual was then serving a six-month sentence in the Ohio Department of Youth Services.  Officer Cunningham arrested Robert M. shortly after his release, developed a photo array, showed it to Tyler, who identified Robert M. as the shooter.

{¶ 10} Robert M. took the stand in his own defense and testified that he was currently on parole for being inside a stolen vehicle. Robert M. denied any involvement in the shooting.

{¶ 11} The trial court found Robert M. delinquent on all counts and sentenced him to a minimum of two years at the Ohio Department of Youth Services. Robert M. now appeals.

## Photo Array

{¶ 12} We will address the first two assigned errors together because of their common basis in fact and law. Robert M. argues he was denied a fair trial because the state lost the photo array and because the trial court permitted testimony about the allegedly suggestive and unreliable photo array.

{¶ 13} In *Arizona v. Youngblood* (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281, the United States Supreme Court addressed the issue of whether a criminal defendant is denied due process of law by a state's failure to preserve evidence. The court stated the following:

> **"The Due Process Clause of the Fourteenth Amendment, * * *, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the result of which might have**

**exonerated the defendant. \* \* \* We think that requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant. We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." (Citations omitted.)**

{¶ 14} Therefore, the United States Supreme Court established two tests: one that applies when the evidence is "materially exculpatory" and one that applies when the evidence is "potentially useful." If the state fails to preserve evidence that is materially exculpatory, the defendant's rights have been violated. Id. "However, evidence is material only if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Schurlock*, 5th Dist. No. 05-CA-116, 2006-Ohio-4445. "To be materially exculpatory, 'evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *State v. Colby*, 11th Dist. No. 2002-P-0061, 2004-Ohio-343, quoting *California v. Trombetta* (1984), 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413.

{¶ 15} If, on the other hand, the state fails to preserve evidence that is potentially useful, the defendant's rights have been violated only upon a showing of bad faith. *Schurlock*, supra. The term "bad faith" implies something more than bad judgment or negligence; "it imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." *State v. Franklin*, Montgomery 2d Dist. No. 19041, 2002-Ohio-2370.

{¶ 16} In the instant case, it is appalling that the state lost the photo array, nevertheless, we find that it was potentially useful, rather than materially exculpatory. Officer Cunningham testified that he used his cellular phone to photograph Robert M., created a photo array using individuals with similar appearances, and then showed the array to Tyler. Officer Cunningham stated that Tyler identified Robert M. without any suggestions or prodding. Officer Cunningham subsequently forwarded the photo array to the detective bureau.

{¶ 17} Here, we find no evidence of bad faith, dishonest purpose, moral obliquity, or conscious wrongdoing. More importantly, we find that the loss of the photo array was not prejudicial.

{¶ 18} Tyler recognized Robert M. from seeing him in the neighborhood and also had ample opportunity to observe him at the time of the attack. At trial, the following exchange took place:

"**Q. Okay. Just to make sure, a couple more things. You stated that you were positive. How do you know that this is the young man that shot you that day?**

"**A. Because he was standing right next to me.**

"**Q. Did you see the guys - -**

"**A. Before - - when he first came, he was standing right next to me, like right here. Our first initial conversation was right here.**" Tr. 23-24.

"**\* \* \***

"**Q. Okay. And did you give a description of the person who shot you to Officer Cunningham?**

"**A. Yes.**

{¶ 19} "**Q. And what was that description?**

"**A. Brown skinned and short haircut.**

"**Q. Okay.**

"**A. And I let the officer know that I knew his face, I knew who he was.**" Tr. 26.

{¶ 20} The above excerpt, and elsewhere in the record, establishes that Tyler had no problem identifying Robert M. as the person who shot him that day. In *State v. King* (Dec.19,1995), 10 Dist. 95APA04-421, a case involving

a similar fact pattern, a police detective investigating the robbery of a gas station showed the cashier a photographic array the day after the robbery. The cashier chose the pictures of the two defendants and indicated that she was absolutely certain they were the robbers.

{¶ 21} However, eight years later, the cashier could not identify the defendant in court. In addition, the photographic array was lost during one of the defendant's appeals and could not be used at the trial. The defendant filed a motion to suppress the cashier's pretrial identification, which the trial court denied.

{¶ 22} On appeal, the court reiterated that reliability is the "linchpin" in determining the admissibility of identification testimony. The court stated:

> **"In this case, Higgins testified that she saw two robbers when they asked for cigarettes and pop. She could clearly see their faces because they were not wearing masks. She stated that the station was well-lit. She testified that the two men were probably in the station for ten to fifteen minutes. The next day she was asked to look at the photos and she was absolutely positive that the two pictures she chose were the robbers. Under these circumstances, the prior identification was reliable."** Id.

{¶ 23} Likewise, Tyler had ample opportunity to observe him as they walked from the corner store to Tyler's house. Given Tyler's unequivocal identification of Robert M., we conclude he was not prejudiced by the loss of

the photo array constructed by Officer Cunningham. Accordingly, we overrule the first and second assigned errors.

## Ineffective Assistance of Counsel

{¶ 24} In the third assigned error, Robert M. argues defense counsel was ineffective for failing to file a motion to suppress the identification evidence.

{¶ 25} In order to prevail on a claim for ineffective assistance of counsel, the defendant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

{¶ 26} Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at 143.

{¶ 27} In determining whether counsel's performance fell below an objective standard of reasonableness, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland* at 689. Because of the

difficulties inherent in determining whether counsel rendered effective assistance in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.

{¶ 28} Failure to file a motion to suppress may constitute ineffective assistance of counsel if there is a solid possibility that the court would have suppressed the evidence. *State v. Pimental*, Cuyahoga App. No. 84034, 2005-Ohio-384. Courts apply a two-prong test to determine the admissibility of challenged identification testimony. First, the defendant bears the burden of demonstrating that the identification procedure was unduly suggestive. To meet this burden, the defendant must show that the procedure was unduly suggestive and resulted in an unreliable identification. Unreliable means that the suggestive procedure is capable of resulting in an irreparable mistaken identity. *Simmons v. United States* (1968), 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247; *State v. Page*, Cuyahoga App. No. 84341, 2005-Ohio-1493.

{¶ 29} To determine if the procedure was impermissibly suggestive, the courts look at the totality of the circumstances, including the victim's opportunity to view the defendant during the offense, her degree of attention, the accuracy of descriptions given to the police, her level of certainty, and lapse of time from the event to the time of identification. *State v. Goza*, Cuyahoga App. No. 89032, 2007-Ohio-6837, citing *State v. Caldwell* (Sept. 27,

1984), Cuyahoga App. No. 45112. Then, even if the court finds the procedure suggestive, the identification would still be admissible if the identification itself was adequately reliable. Id., citing *State v. Moody* (1978), 55 Ohio St.2d 64, 67, 377 N.E.2d 1008.

{¶ 30} Here, as discussed in the previous assigned errors, Tyler was positive that Robert M. was the shooter, having recognized him from seeing him around the neighborhood. In addition, Tyler had ample opportunity to observe Robert M., who walked beside Tyler for some distance prior to the shooting. Further, when Tyler reached his house and found the front door locked, he turned around and was face to face with Robert M. before he was shot.

{¶ 31} We conclude, Tyler's unequivocal identification of Robert M. would have made filing a motion to suppress the identification evidence futile. As such, defense counsel was not ineffective for failing to file such a motion. Accordingly, we overrule the third assigned error.

### Manifest Weight of the Evidence

{¶ 32} In the fourth assigned error, Robert M. argues his convictions were against the manifest weight of the evidence.

{¶ 33} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> **"The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."**

{¶ 34} As previously discussed, Tyler unequivocally identified Robert M. as his assailant.   After listening to all the evidence, the trial court stated:

> **"Robert, I got to decide whether the evidence is sufficient to prove beyond a reasonable doubt.   I didn't believe your testimony when you came up here.   I have no reason to doubt the victim's testimony.   So I find you guilty of all the charges."** Tr. 63-64.

**{¶ 35}** The determination of weight and credibility of the evidence is for the trier of fact. *State v. Chandler*, 10th Dist. No. 05AP-415, 2006-Ohio-2070, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimonies are credible. *State v. Williams*, 10th Dist. No. 02AP-35, 2002-Ohio-4503.

**{¶ 36}** Accordingly, an appellate court may not substitute its view for that of the jury, but our role "in resolving conflicts in the evidence" is to determine whether the jury lost its way thereby creating a manifest miscarriage of justice that requires a new trial. *Thompkins* at 387, 678 N.E.2d 541.

**{¶ 37}** Here, we are not disposed to reach such a conclusion. After reviewing the entire record, we cannot conclude that any of the evidence weighs heavily against the trial court's finding of guilt. Accordingly, we overrule the fourth assigned error.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's finding of delinquency having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

MARY EILEEN KILBANE, A.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR